NATIONAL COTTON COMPRESS & COTTON WAREHOUSE
ASSN. ET AL *v.* ATLANTIC MUTUAL INSURANCE ·CO. ET AL

5-4114 & 5-4178                     413 ·S. W. 2d 860

Opinion delivered April 17, 1967

*John H. Todd* and *Owens, McHaney & McHaney,* for appellant.

*Gaughan & Laney,* for appellee.

GEORGE ROSE SMITH, Justice. Under the Arkansas Insurance Code an insurance company belonging to a rating organization may apply to the Insurance Commissioner for permission to put into effect a deviation from premium rates fixed by the rating organization. Ark. Stat. Ann. § 66-3122 (Repl. 1966). These two appeals, consolidated here, bring up for review orders of the Commissioner by which the appellees, Atlantic Mutual Insurance Company and Highlands Insurance Company, were permitted to lower their fire insurance rates upon cotton stored in some 500 "igloo-type" warehouses on the premises of the Shumaker Naval Ordinance Depot, near Camden. Under the Code the circuit court reviews the Commissioner's decision by what amounts to a trial

*de novo,* but in this court the substantial evidence rule is controlling. Section 66-3134.

The appellees, in seeking authority to lower their premiums, based their request upon the exceptionally fire-resistant construction of the igloo warehouses and upon a favorable loss-experience record with respect to similar warehouses in Texas. The application for a deviation was opposed by the appellants, two trade associations that represent the great majority of cotton warehousemen in Arkansas. The protestants contended that the proposed premium rates would be unjustifiably low and would give an unfair competitive advantage to the igloo-type facilities. The Commissioner approved the requested reduction in rates, finding that "by reason of the unique and unusual type and quality of construction of these warehouse facilities and the fire protection equipment and service available to the area of the storage facilities, the applications should be approved."

We lay aside the appellees' reliance upon the loss-experience in Texas. Apparently it did not extend over a period of five years, as required by the Code. Section 66-3104 (1) (c). We also lay aside the appellants' contention that the reduced premium rate permits the proprietors of the igloos to enjoy an unfair competitive advantage in storage rates. The record does not contain sufficient proof to support a finding that the reduction in rates has had or will have the effect of creating an unwarranted disparity in storage charges. As we view the case, the single controlling issue is whether there is substantial evidence to support the circuit court's conclusion that the Commissioner correctly found the igloos to have advantages in construction and in fire protection sufficient to sustain the requested reduction in premium rates.

We find the evidence abundantly sufficient to support the circuit court's judgments. These igloos were originally built for the storage of *explosives* at the ordnance plant. The buildings are made of reinforced

concrete, with thicknesses of six inches for the floors, eight inches for the roofs, and fourteen inches for the walls. The only entrances are steel doors at the front of the buildings. There are small vents for ventilation, but they can be closed to shut off the oxygen supply for any fire that might get started. There is no electric wiring whatever in the buildings, nor any heating or lighting facilities that might create a fire hazard.

The igloos are spaced about four hundred feet apart. Warehouse employees are in and out of the buildings during the daytime, and each igloo is opened and inspected every night by a watchman. The proprietors have contracts with Camden and East Camden for fire-department protection. Moreover, the only cotton stored in the igloos is what is referred to in the warehouse business as "old cotton"—that is, cotton ginned from 48 to 72 hours prior to its being put in storage. That interval goes far toward eliminating the possibility that a fire caused by a spark in the ginning process may still be smoldering inside the bale when the cotton is warehoused.

We gather from the record that cotton warehouses have heretofore been classified, for rating purposes, either as protected by a sprinkler system or as not so protected. The igloos now in question are not so protected, but it cannot be doubted that their construction makes them far more fire-resistant than unsprinklered warehouses of conventional design. In fact, the only two unsprinklered cotton warehouses in the State, other than the igloos, are receiving stations of inferior construction which are used for the temporary storage of "new cotton."

Upon the record as a whole we agree with the Commissioner's conclusion that the extent to which these igloo-type buildings deserve a reduced premium rate is essentially a matter of judgment. No fire has yet occurred in any of them. The appellees declare their willingness to insure cotton in any similar warehouses at the rate proposed by their request for a deviation. It is

perhaps somewhat unusual for a group of ratepayers to be in the attitude of protesting insurance rates on the ground that they are too low, but on the record now before us we are unwilling to say that the Commissioner should have refused to permit the downward deviation.

Affirmed.